

U.S. Department of Justice

United States Attorney
Eastern District of New York

WMP:ALC/LHE/SME                   271 Cadman Plaza East
F. # 2016R00505                   Brooklyn, New York 11201

January 10, 2017

**SUBMITTED UNDER SEAL**

By Hand and ECF

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Joseph SanFilippo
>       Criminal Docket No. 16-640 (DLI)

Dear Chief Judge Irizarry:

The government respectfully submits this letter to notify the Court of an attorney conflict of interest with respect to the defendants Joseph SanFilippo and Joseph Mann in the above-captioned case. The conflict involves Kevin O'Brien, Esq. of the law firm Ford O'Brien LLP, who currently represents SanFilippo, and previously represented Mann, in connection with this matter.[1] The government respectfully requests that the Court disqualify Mr. O'Brien from representing SanFilippo. In the alternative, the government requests that the Court appoint independent counsel to SanFilippo in order to advise him of the conflict and his right to independent counsel, and then conduct a Curcio hearing on this issue. The government further respectfully requests that the Court inquire of Mann his position as to a waiver of the conflict of interest posed by Mr. O'Brien's representation of SanFilippo. The parties are scheduled to appear before the Court for an initial status conference on Thursday, January 12, 2017.

I.      Background

        A.      The Pre-Indictment Period

On or about June 13, 2016, the government served SanFilippo with a grand jury subpoena for documents and testimony. On June 22, 2016, Mr. O'Brien notified the government

---

[1] On January 6, 2017, Jonathan Sack, Esq., filed a notice of appearance indicating that he represents Joseph Mann. As detailed herein, as recently as mid-December 2016, Mr. O'Brien informed the government that he was the attorney of record for Mann. The government is currently unaware of any conflict of interest presented by Mr. Sack's representation of Mann.

that he represented SanFilippo in connection with the government's investigation. Mr. O'Brien and the government agreed to a proffer meeting with SanFilippo, which occurred on July 12, 2016, and the government excused SanFilippo from testifying before the grand jury. Following that proffer meeting, Mr. O'Brien and the government engaged in intermittent discussions about SanFilippo. On or about July 5, 2016, the government served Mann with a grand jury subpoena for documents and testimony. On July 8, 2016, Mr. O'Brien notified the government that he also represented Mann in connection with the government's investigation. Mann neither testified before the grand jury nor proffered with the government.

Prior to the indictment, in mid-December 2016, the government informed Mr. O'Brien that SanFilippo and Mann were targets of the investigation. The government further informed Mr. O'Brien that it could not engage with Mr. O'Brien in a meaningful discussion about Mann because of the conflict caused by Mr. O'Brien's dual representations of SanFilippo and Mann.

B. The Indictment

On December 15, 2016, a grand jury sitting in the Eastern District of New York returned an eight-count indictment in the above-captioned matter charging defendants Mark Nordlicht, David Levy, Uri Landesman, SanFilippo, Mann, Daniel Small and Jeffrey Shulse in connection with two fraudulent schemes involving Platinum Partners L.P. ("Platinum"), a purportedly $1.7 billion hedge fund based in New York, New York. The indictment alleged that SanFilippo and Mann were employed by Platinum through 2016. SanFilippo served as the Chief Financial Officer ("CFO") of Platinum Partners Value Arbitrage Fund, L.P. ("PPVA") from approximately 2005 through 2016, and was a member of Platinum's valuation committee. Mann was employed in Platinum's marketing department from approximately 2013 through 2016. His responsibilities included, among other things, soliciting investments for Platinum's funds, including PPVA. Both individuals were part of Platinum's "back office" and were involved in the operations of the fund.

The indictment charges two schemes: first, a scheme to defraud the investors of PPVA and, second, a scheme to defraud holders of bonds issued by Black Elk Energy Offshore Operations, LLC, a company in which Platinum held a controlling stake. SanFilippo and Mann are charged in connection with only the first scheme. As alleged in the indictment, SanFilippo and Mann, together with their co-conspirators, perpetrated a scheme to defraud the investors of PPVA through lies and omissions related to, among other things: (i) the performance of some of PPVA's highly illiquid and privately-held assets; (ii) PPVA's accessibility to cash or assets that could easily be converted into cash; (iii) the purpose of loans raised through investors and the use of those loan proceeds; and (iv) PPVA's preferential redemption or investor payment process. Specifically, Platinum fraudulently overvalued some of PPVA's highly illiquid and privately-held assets in order to, among other things, boost performance numbers, attract new investors, retain existing investors and extract high management and incentive fees. From 2012 through 2016, Platinum extracted more than $100 million in fees based, in large part, on its overvalued assets. Platinum's overvaluation of some of its assets precipitated a severe cash crunch, which Platinum initially attempted to mitigate through high-interest loans between its various hedge funds and related entities. When the inter-fund loans proved insufficient to resolve PPVA's cash crunch, Platinum

began selectively paying some investors ahead of others, contrary to the terms of its governing documents.

    C.    The Post-Indictment Period

On December 19, 2016, federal agents arrested SanFilippo and Mann, together with their co-defendants. Following the arrest, the government contacted Mr. O'Brien to learn the identity of counsel who would be representing SanFilippo and Mann separately in connection with the criminal case. Mr. O'Brien informed the government that he would represent both defendants for purposes of arraignment. The government expressed its objection to the representations but acceded to the dual representation only for purposes of arraignment.

On December 22, 2016, the government sent an email to Mr. O'Brien to check on the identity of new counsel for SanFilippo and Mann. On December 27, 2016, Mr. Sack's law firm contacted the government and stated that it was in the process of being retained by Mann. On January 5, 2016, having still not heard back from Mr. O'Brien, the government again contacted Mr. O'Brien to learn the identity of new counsel for SanFilippo. In an email exchange, Mr. O'Brien advised the government that he intended to continue his representation of SanFilippo "at least for purposes of the status conference, if not beyond." The government informed Mr. O'Brien that it intended to oppose the representation and file this letter with the Court unless Mr. O'Brien changed his position. As of the filing of this letter, Mr. O'Brien had not changed his position.

II.    Applicable Law

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988). The Second Circuit "has held that when a potential conflict of interest arises, before, at, or during the trial of several defendants who have retained the same attorney, the trial court should conduct a hearing to determine whether there exists a conflict which would prevent the accused from receiving the kind and quality of legal advice and assistance that is guaranteed by the Sixth Amendment." Id. (citing Abraham v. United States, 549 F.2d 236 (2d Cir. 1977)). Indeed, the Second Circuit has repeatedly noted that such conflicts should be brought to the attention of the court as early as possible. See United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

    A.    Actual and Potential Conflicts of Interest

To determine if the defendant's counsel is burdened by a conflict of interest, the court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the

3

attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). An attorney has a potential conflict of interest "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998). Where an attorney has represented (or currently represents) an individual who could be a witness in the current client's criminal matter, such representation presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Ioizzo, 786 F.2d 52, 57 (2d Cir. 1986). A lawyer owes an absolute duty of loyalty and confidentiality to his clients, current and former. A lawyer representing one client cannot, for example, use privileged information obtained from one client in a way that would negatively affect the other client. Similarly, an attorney cannot use information obtained from one client to attack his other client through cross-examination or argument to the jury. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982); United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); United States v. Rahman, 861 F. Supp. 266, 277 (S.D.N.Y. 1994); United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently"). Likewise, a serious conflict may arise if one defendant wished to cooperate with the government's investigation and were to testify as to facts inculpating the other defendant.

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

B. Standard for Disqualification Versus Determining Valid Waiver

Courts have found disqualifying conflicts where (a) a defense attorney's duty of loyalty impairs the attorney's ability to advance an effective defense on behalf of a client or (b) the defense attorney's duty to uphold a client's confidences could be compromised by a duty to another client. See, e.g., Levy, 25 F.3d at 157-58 (defendant denied effective assistance where counsel had represented accomplice); United States ex rel. Stewart on Behalf of Tineo v. Kelly, 870 F.2d 854, 856 (2d Cir. 1989) (disqualification of defense counsel proper where counsel had represented a government witness on an unrelated matter, despite counsel's assertion that he did not have privileged information); United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986) (reversing conviction because of counsel's inability to cross-examine former client testifying against defendant at trial).

4

In Locascio, the Second Circuit noted that counsel's "multiple representation" or "prior representation of a witness or co-defendant" are "typical" situations in which a district court can properly find that disqualification is necessary. Locascio, 6 F.3d at 931 (citing Stewart, 870 F.2d at 856-57). Similarly, in United States v. Rogers, 9 F.3d 1025, 1031-33 (2d Cir. 1993), the Second Circuit held that the district court did not abuse its discretion in disqualifying counsel who had previously represented a government witness at a civil deposition arising out of the same facts. Indeed, the Court in Rogers held that the district court did not err in failing to address the defendant personally to determine whether he was prepared to waive the conflict, in light of the courts' "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession." Id. (quoting Wheat, 486 U.S. at 160).

The Second Circuit's holdings are premised on the principle that cross-examining a client presents the attorney with irreconcilable obligations. In the multiple representation context, the attorney has an obligation to his defendant-client, on the one hand, to examine his own witness-client vigorously and without reservation. On the other hand, the attorney has an obligation to protect the confidences and interests of his witness-client. Such a conflict is irremediable. See, e.g., Malpiedi, 62 F.3d at 469-70 (reversing conviction because defense attorney's prior representation of government witness in appearance before grand jury created a conflict of interest precluding attorney from representing defendant at trial).

However, if the conflicts are of a kind that a rational defendant could knowingly and intelligently desire the conflicted attorney's representation, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153. Where the dual representation involves a prior client, a knowing waiver by both clients is preferable, though not necessarily required. United States v. Gotti, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998) ("A waiver by both clients typically alleviates [the problem caused by an attorney's] prior representation of a witness or co-defendant") (citing United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir.1997)); United States v. Lussier, 71 F.3d 456, 462 (2d Cir. 1995); Iorizzo, 786 F.2d at 57–58).

In summarizing the Curcio procedures, the Second Circuit has instructed trial courts to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90.

III.     The Serious Conflicts in the Present Case and the Government's Proposed Inquiry

The source of the attorney conflict presented in this case arises from Mr. O'Brien's simultaneous representation of SanFilippo and Mann in connection with the same charged conduct.

5

Either of these defendants could ultimately be a witness against the other. The two defendants worked together for several years at the fund implicated by the charges in this case. Each is knowledgeable as to the role the other played at the fund and how that role relates to the charged conduct. Accordingly, their interests could very well diverge at trial, in which case Mr. O'Brien could face a serious conflict of interest as to whose interests to protect in the face of the multiple duties of loyalty he currently holds. Accordingly, based on the law in this Circuit, the government respectfully submits that Mr. O'Brien's multiple representations here necessitate his disqualification. See Locascio, 6 F.3d at 931; Stewart, 870 F.2d at 856-57.

If the Court believes that immediate disqualification is not necessary, the government respectfully requests that the Court appoint independent Curcio counsel to advise SanFilippo about the conflict. The government also respectfully requests that the Court direct Mr. Sack to advise Mann about the conflict. After each defendant has had an opportunity to meet with such counsel, the government proposes that the Court advise SanFilippo of the potential conflict in order to obtain a knowing waiver (if such waiver is appropriate). The government further proposes that the Court inquire as to Mann's position regarding a waiver.

The government proposes that the Court advise SanFilippo as follows:

Mr. SanFilippo, I am advised that you are currently represented by Mr. O'Brien in connection with this matter. I am also advised that Mr. Mann, who is your co-defendant, was previously represented by Mr. O'Brien in connection with this case.

Generally speaking, you have the right to be represented by the attorney of your choice, and I have every reason to believe that Mr. O'Brien, who has been a member of the bar and practiced in federal court for many years, is capable of adequately representing you. You may continue to have Mr. O'Brien represent you if you so desire but there are some risks for you in proceeding with Mr. O'Brien, and I must ask you a series of questions to assure myself that you understand the risks and still want to proceed with Mr. O'Brien.

It is possible that Mr. O'Brien could make decisions in connection with his representation of you, consciously or unconsciously, with an eye to how such decisions might affect his previous client, Mr. Mann. For example, Mr. O'Brien could advise you not to reveal certain information to the government, because such information could be harmful to Mr. Mann. Alternatively, Mr. O'Brien could take the position that you have either forgotten or mischaracterized certain interactions with Mr. Mann, in an attempt to shift blame away from Mr. Mann. Such decisions may have a negative effect on how your criminal case proceeds or is resolved with respect to your situation.

Mr. O'Brien also may have privileged information from Mr. Mann that could assist you but that he cannot disclose to you because of his ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crimes charged, or your relationship

6

with Mr. Mann, whereas Mr. O'Brien may be ethically barred from pursuing such a strategy due to contrary information he may have obtained from Mr. Mann.

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact that he also represented Mr. Mann. No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you?

Can you tell me in your own words what you understand the potential conflict of interest to be?

You have the right to be represented by an attorney who does not have any possible conflict of interest in representing you at all stages of this case, including any plea negotiations or other resolutions of the matter. If you proceed with Mr. O'Brien as your attorney, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorneys?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with Mr. O'Brien as your attorney. Do you understand that?

In this case, I have previously appointed _____ to consult with you about this issue and, although that attorney was only appointed for a limited time, if you need more time to consult with them about this issue, I can extend the time period of the appointment. You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do. Do you feel you have had enough time to consult with your appointed attorney and are you comfortable making a decision now?

Are you willing to give up the rights that I described to have counsel free of any conflict, so that you can proceed with Mr. O'Brien as your counsel?

IV.   Conclusion

For the reasons set forth above, the government respectfully requests that the Court disqualify Mr. O'Brien from representing SanFilippo. In the alternative, the government requests that the Court appoint Curcio counsel to SanFilippo (for a short, limited period, and only to advise him concerning the conflict and his right to independent counsel) and then conduct a Curcio inquiry as to both SanFilippo and Mann. See, e.g., Stantini, 85 F.3d at 13; Malpiedi, 62 F.3d at 467. The government also respectfully requests that, if the Court grants the government's request to assign Curcio counsel, the government be permitted to provide this letter to Curcio counsel.

7

Because this letter discusses the details of grand jury proceedings, and given the need to maintain grand jury secrecy, see United States v. Haller, 837 F.2d 84, 87-88 (2d Cir. 1988), the government respectfully requests that this letter be filed under seal.

        Respectfully submitted,

        ROBERT L. CAPERS
        United States Attorney
        Eastern District of New York

By:     /s/
        Lauren Howard Elbert
        Winston Paes
        Alicyn Cooley
        Sarah M. Evans
        Assistant U.S. Attorneys
        (718) 254-7000

cc.     Kevin O'Brien, Esq. (by e-mail)
        Jonathan Sack, Esq. (by e-mail)