JMK: WMP/ALC/LHE/SME
F: #2016R00505

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

       *Plaintiff,*

  - against -

MARK NORDLICHT,
DAVID LEVY,
URI LANDESMAN,
JOSEPH SANFILIPPO,
JOSEPH MANN,
DANIEL SMALL and
JEFFREY SHULSE,

       *Defendants.*
------------------------------------------------------------------X

Hon. Dora Irizarry
16 CR 640 (DLI)


**MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE GOVERNMENT'S
MOTION TO DISQUALIFY KEVIN J. O'BRIEN**


Dated: February 1, 2017

Kevin J. O'Brien
Ford O'Brien, LLP
85 Broad Street, 28th Floor
New York, NY 10004
(212) 858-0040
Kobrien@fordobrien.com

*Attorney for Defendant*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES………………………………………………………………....ii

INTRODUCTION……………………………………………………………………….....1

RELEVANT FACTS……………………………………………………………………....2

    Mr. O'Brien's Representation of Mr. San Filippo……………………………....2

    Mr. O'Brien's Previous Representation of Mr. Mann…………………………..3

    The Indictment……………………………………………………………………4

    Adam Ford………………………………………………………………..............4

ARGUMENT……………………………………………………..............................5

I.       Any Potential Conflict of Interest Posed by Mr. O'Brien's Former Representation of Mr. Mann is Waivable by Mr. SanFilippo……………………………………..5

  A.  Disqualification is Required Only in the Rare Case of a Severe Actual Conflict……...5

  B.  In This Case, Mr. O'Brien's Conflict is Potential and Therefore Waivable by Mr. SanFilippo at the *Curcio* Hearing……………………………………………….....7

  C.  Additional Factors Make the Possibility of an Actual Conflict Remote or Perhaps Nonexistent in This Case………………………………………………………10

II.      Mr. Mann's Attorney-Client Privilege Will Be Fully Protected in the Event Mr. O'Brien Represents Mr. SanFilippo in This Case…………………………….....12

CONCLUSION……………………………………………………………………….....13

i

# TABLE OF AUTHORITIES

**Cases**

*United States v. Armedo-Sarmiento,*
  524 F.2d 591 (2d Cir. 1975) .................................................................................. 10, 12

*United States v. Cain,*
  671 F.3d 271 (2d Cir. 2012) ............................................................................................ 7

*United States v. Camisa,*
  969 F.2d 1428 (2d Cir. 1992) ................................................................................ 8, 9, 11

*United States v. Castellano,*
  610 F.Supp. 1137 (S.D.N.Y. 1985) ............................................................................ 11, 12

*United States v. Cunningham,*
  672 F.2d 1064 (2d Cir. 1982) ........................................................................... 5, 6, 9, 11

*United States v. Curcio,*
  694 F.2d 14 (2d Cir. 1982) ............................................................................................. 7

*United States v. Fulton,*
  5 F.3d 605 (2d Cir. 1993) ............................................................................................... 6

*United States v. Gonzalez-Lopez,*
  548 U.S. 140 (2006) ....................................................................................................... 6

*United States v. Kliti,*
  156 F.3d 150 (2d Cir. 1998) ........................................................................................... 7

*United States v. Levy,*
  25 F.3d 146 (2d Cir. 1994) ............................................................................................. 7

*United States v. Liszewski,*
  06 CR 130, 2006 WL 2376382 (E.D.N.Y. Aug. 16, 2006) ............................................................. 6

*United States v. McDonald,*
  2002 WL 31056622 (E.D.N.Y. Aug. 6, 2002) ..................................................................... 6, 9

*United States v. Perez,*
  325 F.3d 115 (2d Cir. 2003) ................................................................................... 5, 6, 7

*United States v. Perrone,*
  05 CR 774, 2007 WL 1575248 ............................................................................. 10, 12

*United States v. Pizzonia,*
  415 F. Supp. 2d 168 (E.D.N.Y. 2006) ............................................................................. 5, 7

*United States v. Schwarz,*
  283 F.3d 76 (2d Cir. 2002) ................................................................................................ 6

*United States v. Turner,*
  594 F.3d 946 (7th Cir. 2010) ............................................................................................. 9

*United States v. Wisniewski,*
  478 F.2d 274 (2d Cir. 1973) ............................................................................................. 5

*Wheat v. United States,*
  486 U.S. 153 (1988) ...................................................................................................... 5, 6

**Statutes**

U.S. Const. amend. VI ........................................................................................................... 5

Defendant Joseph SanFilippo submits this Memorandum of Law in further opposition to the government's request to disqualify Kevin J. O'Brien from representing him.

**Introduction**

By letter dated January 10, 2017 (the "Government Letter") the government requested that the Court disqualify Mr. O'Brien from representing Defendant Mr. SanFilippo in this criminal case on account of Mr. O'Brien's prior, limited representation of Defendant Joseph Mann. In the alternative, the government requested a *Curcio* hearing and related procedures to explore the possible conflicts of interest posed by these representations. Mr. Mann has not joined the government's motion.

Mr. SanFilippo responded by letter filed the next day, January 11th (the "SanFilippo Letter") in which he opposed the request to disqualify Mr. O'Brien but did not oppose the scheduling of a *Curcio* hearing or the appointment of an independent counsel for Mr. SanFilippo, as requested by the government. At the status conference the next day, January 12th, the Court appointed Stuart Grossman as independent counsel and set down a *Curcio* hearing for February 3, 2017.

Mr. SanFilippo submits this Memorandum of Law and accompanying Declarations in anticipation of the scheduled *Curcio* hearing. Three points are clear from the applicable case law and the factual record.

First, the government's request to disqualify Mr. O'Brien should be denied, because his former representation of Mr. Mann is not a severe actual conflict of interest but a potential conflict of interest only, which could materialize only if multiple future events were to fall into place.

1

Second, this potential future conflict, which raises the remote possibility that Mr. O'Brien may have to limit his cross examination of his former client, can be waived by Mr. SanFilippo at the *Curcio* hearing. Indeed, even the possibility of a conflict could be eliminated if Mr. O'Brien's law partner, Adam Ford, were to conduct the cross examination, because Mr. Ford never met Mr. Mann prior to the December 19th arraignment, has never had a substantive discussion with him apart from arraignment matters, and has no knowledge of Mr. O'Brien's prior communications with Mr. Mann. We therefore propose the substitution of Mr. Ford in these circumstances, subject to the approval of the Court.

Third, Mr. Mann's attorney-client privilege protecting his communications with Mr. O'Brien, which he has not waived, must and will be fully respected in the criminal proceedings if Mr. O'Brien represents Mr. SanFilippo. The substitution of Mr. Ford, in the remote event that Mr. Mann testifies against Mr. SanFilippo, would enhance the protection of this privilege.

## Relevant Facts

**Mr. O'Brien's Representation of Mr. San Filippo**

Mr. San Filippo was, until the indictment, the Chief Financial Officer of Platinum Management (NY) LLC ("Platinum"), a management company for the largest Platinum-affiliated hedge fund. On or about June 13, 2016, government agents visited the home of Mr. SanFilippo, who was not there at the time. Mr. SanFilippo then retained this firm to represent him, and on June 22nd we notified the government of our retention. Extensive discussions between this firm and the government then ensued, culminating in an all-day proffer meeting with Mr. SanFilippo on July 12th in the Eastern District offices. *See* the annexed Declaration of Kevin J. O'Brien ("O'Brien Dec.") at ¶ 2.

Since being retained by Mr. San Filippo, this firm has been extensively involved in his defense, including but not limited to his proffer session. A strong relationship of trust has developed between Mr. O'Brien and Mr. SanFilippo in particular. This representation now is focused on the preparation of Mr. SanFilippo's defense at trial, to which many hours already have been devoted in understanding the facts and circumstances of this complex case. O'Brien Dec. at ¶ 3.

**Mr. O'Brien's Previous Representation of Mr. Mann**

Mr. Mann was, until his indictment, employed in the investor relations group of Platinum Management. On or about July 5, 2016, the government served Mr. Mann with a grand jury subpoena for testimony and documents. Mr. Mann then retained this firm to represent him, and in a July 8th email we notified the government of our retention, adding that we looked forward to discussing Mr. Mann "at your convenience." In an email the same day, the government responded "Sure, we can discuss next week," but it did not follow up. The government did not request that Mr. Mann testify or produce documents, nor did it propose a proffer, as was the case with Mr. SanFilippo. With one brief exception,[1] the government had no discussions with Mr. O'Brien about Mr. Mann until shortly before the indictment. O'Brien Dec. at ¶ 4.

---

[1] That exception occurred when the government emailed Mr. O'Brien on August 12, 2016 with the request: "Can you please let me know who you or your firm represents in connection with the Platinum Partners matter? I want to get a sense of potential conflict issues. Thanks." Mr. O'Brien responded by telephone on August 15th, informing the government that in the Eastern District investigation he represented Mr. SanFilippo and Mr. Mann. The government's response was, in substance, that his representation of these two clients did *not* pose a conflicts problem. Not until the eve of the indictment did the government suggest the joint representation might be an issue. O'Brien Dec. at ¶ 4 n.1.

3

For these reasons, the firm's representation of Mr. Mann was relatively limited. Mr. O'Brien met with Mr. Mann only once prior to the arraignment, in July 2016, for approximately two hours.[2] Immediately following the arraignment, the firm resigned its representation of Mr. Mann, who selected new counsel. O'Brien Dec. at ¶ 5.

**The Indictment**

The indictment in this case alleges two fraudulent schemes, only one of which – the "Fraudulent Investment Scheme" – includes Messrs. SanFilippo and Mann (along with three other defendants). The allegations pertaining to this scheme are generally framed against all five defendants, without any differentiation of alleged roles. There is only one allegation in this section that highlights Messrs. SanFilippo and Mann specifically: "As early as approximately April 2015, MANN was responsible for tracking all investor activity and maintaining a 'capital activity report' that he circulated to SANFILIPPO and others on a weekly basis." In addition, the conspiracy section of the indictment lists two overt acts in which Mr. Mann allegedly refers to "our CFO" in emails. Nowhere in the indictment is there an allegation that Mr. SanFilippo and Mr. Mann actually acted together, whether on their own or in conjunction with any other defendant. O'Brien Dec. at ¶ 6.

**Adam Ford**

Adam Ford, Mr. O'Brien's co-partner at Ford O'Brien LLP, is a member of Mr. SanFilippo's trial team. Mr. Ford has never represented Mr. Mann except for the limited purpose of assisting Mr. O'Brien on the day of the arraignment, December 19th, and then helping to obtain new counsel for Mr. Mann immediately following the arraignment. Prior to the arraignment date, Mr. Ford had no communication with Mr. Mann, oral or otherwise. Mr.

---

[2] Mr. O'Brien was assisted in his representation of Mr. Mann by Suzanne Pope, a Special Counsel at the firm. She also attended the one meeting with Mr. Mann.

4

Ford also has not been informed of the contents of any of Mr. O'Brien's or Ms. Pope's pre-arraignment communications with Mr. Mann, and he will not be informed of them in the future. O'Brien Dec. at ¶¶ 7-8 and Exhibits A and B (Declaration of Suzanne Pope and Adam Ford).

## Argument

Two parties have an interest in the proper resolution of this dispute: Mr. SanFilippo, currently represented by Mr. O'Brien, and Mr. Mann, formerly represented by him. But their interests differ and must be examined separately – Mr. SanFilippo's in Point I and Mr. Mann's in Point II, below.

### I. Any Potential Conflict of Interest Posed by Mr. O'Brien's Former Representation of Mr. Mann Is Waivable by Mr. SanFilippo

#### A. Disqualification is Required Only in the Rare Case of a Severe Actual Conflict

The Sixth Amendment guarantees: "In all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. As the Second Circuit has explained, "[t]his constitutional guarantee generally ensures that an accused may be represented by any attorney who will agree to take his case." *United States v. Perez*, 325 F.3d 115, 124 (2d Cir. 2003) (citing *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982)). While the government correctly points out that "a defendant's right to counsel of his choice is not an absolute one," the Second Circuit has "consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is 'a right of constitutional dimension.'" *Id.* at 124–25 (citing *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir. 1973)); *see also United States v. Pizzonia*, 415 F. Supp. 2d 168, 175–76 (E.D.N.Y. 2006) (recognizing that the right to an attorney includes "the right to counsel of one's own choosing") (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). The "constitutional dimension" of

5

this right makes disqualification so disfavored that, as the Supreme Court has held, the "erroneous deprivation of the right to counsel of choice" qualifies as "structural error," mandating reversal of a conviction even if the trial was fair. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 149–150 (2006).

Accordingly, a presumption exists in favor of a defendant's choice of counsel, which may be overcome only by "a demonstration of actual conflict" or "by a showing of serious potential for conflict." *United States v. Liszewski*, No. 06 CR 130 (NGG), 2006 WL 2376382, at *2 (E.D.N.Y. Aug. 16, 2006) (quoting *Wheat*, 486 U.S. at 164). *See also United States v. McDonald,* No. 01 CR 1168 (JS) (MLO), 2002 WL 31056622, at *1 (E.D.N.Y. Aug. 6, 2002). In general, however, "where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *Perez*, 325 F.3d at 125 (citing *Cunningham*, 672 F.2d at 1073).

Where the government seeks disqualification of an attorney, a court's first step is to "evaluate[] the facts and circumstances of each case to determine whether actual or potential conflicts exist." *Liszewski*, 2006 WL 2376382, at *2. There are three possibilities. If the court discovers "no genuine conflict," then its inquiry ends. *Perez*, 325 F.3d at 125. At the other end of the spectrum, "if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to such a conflict in 'breadth and depth,'" then the court must disqualify counsel. *Id.* (citing *United States v. Fulton,* 5 F.3d 605, 611-13 (2d Cir. 1993); *United States v. Schwarz,* 283 F.3d 76, 95-96 (2d Cir. 2002)).

6

However, "between these two extremes," if the court "determines that the 'attorney suffers from a lesser actual or only a potential conflict,' then *it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.*" *Perez,* 325 F.3d at 125 (quoting *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)) (emphasis added). *See also Pizzonia*, 415 F. Supp. 2d at 176 ("If counsel suffers from only a potential conflict or an insignificant actual conflict, defendant may waive the right to conflict-free counsel."). A potential conflict of interest exists if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *Perez,* 325 F.3d at 125 (quoting *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

Under the Second Circuit's approach, "the class of cases in which an attorney conflict is truly unwaivable is a 'very narrow' one." *United States v. Cain*, 671 F.3d 271, 294 (2d Cir. 2012) (citation omitted). Unless the conflict is so severe that it actually impedes the client's effective assistance of counsel (or causes an analogous injury) and so cannot intelligently be waived, then the presumption is that any conflict may be neutralized by a knowing and intelligent waiver. The underlying principle is that "courts will not 'assume too paternalistic an attitude in protecting the defendant from himself,'" even where the defendant's choice of counsel "may sometimes seem woefully foolish" to the court. *Perez*, 325 F.3d at 126 (quoting *United States v. Curcio*, 694 F.2d 14, 25 (2d Cir. 1982)).

### B. In This Case, Mr. O'Brien's Conflict is Potential and Therefore Waivable by Mr. SanFilippo at the *Curcio* Hearing

The premise of the government's concern with Mr. O'Brien's representation of Mr. SanFilippo is that, by virtue of his former representation of Mr. Mann, Mr. O'Brien will sacrifice the interests of Mr. SanFilippo. Yet, as the Government Letter demonstrates, the supposed

7

conflict is pure speculation. According to the Letter, "either of these defendants *could* ultimately be a witness against the other" (emphasis added), but the Letter offers no basis for concluding that either scenario is likely. The government says "[t]he two defendants worked together for several years" at Platinum Management, and concludes "[e]ach is knowledgeable as to the role the other played at the fund and how that role relates to the charged conduct." *See* Dkt. No. 56 (Letter at 5-6). Platinum Management employed many people, however, and nothing in the indictment suggests that Messrs. Mann and SanFilippo, who were employed in different areas within the company, have significant familiarity with each other's roles or ever worked together. Indeed, the indictment does not allege a single instance in which these two defendants acted together, whether on their own or in conjunction with any other defendant. O'Brien Dec. at ¶¶ 2, 4, 6.

In short, the government can offer no realistic likelihood that Mr. SanFilippo's interests and Mr. Mann's will collide at any time in the future. Mr. O'Brien, therefore, has only a *potential* conflict at this point, one that may well never materialize. As such, the potential conflict can be waived by Mr. SanFilippo at the upcoming *Curcio* hearing.

Prior decisions in our Circuit have consistently followed this rule in declining the government's request to disqualify counsel. For example, in *United States v. Camisa*, 969 F.2d 1428 (2d Cir. 1992), the Second Circuit rejected the government's interlocutory appeal of the district court's denial of its disqualification motion. The basis for the motion was counsel's *simultaneous* representation of a potential witness (Harris) against a defendant who was also his client (Camisa).[3] The court noted first of all that – just as in this case – there was no actual conflict, and there might never be one: "[O]n this record, it is not clear that Harris will be

---

[3] By contrast, Mr. O'Brien has not represented Mr. Mann since the arraignment. O'Brien Dec. at ¶ 5.

8

willing to testify, or, if willing, will have anything admissible to offer." Moreover, the court reasoned, "it is possible that Camisa and Harris may waive any possible conflicts and thereby permit [counsel's] full participation on behalf of Camisa." *Id.* at 1429-30.[4]

Similarly, in *McDonald,* 2002 WL 31056622, the court declined to disqualify trial counsel who formerly represented a government witness, Ruth Schneider, who was to testify in the case. The court explained that the government did not establish an "actual conflict" but merely "speculate[d] that a conflict might arise during the trial due to Ryan's limited prior representation of Mrs. Schneider several years ago." The court observed in general that "[g]ranting a motion to disqualify on these grounds, where the former client is not the moving party, is rarely warranted." *Id.* at *1 (citing *Cunningham*, 672 F.2d at 1072). The government's request for disqualification of Mr. O'Brien is no less speculative, and likewise Mr. O'Brien's prior representation of Mr. Mann (who is not a moving party) was limited. Finally, the *McDonald* court noted that both Mrs. Schneider and defendant appeared before the court for a *Curcio* hearing and made "knowing and intelligent waivers of any potential conflict." *Id.* at *2. *See also United States v. Turner*, 594 F.3d 946, 955 (7th Cir. 2010) (*vacating conviction* because "district court's decision to disqualify Baris was based on the *mere possibility* that either Womack or Turner [Baris' two clients] might have a change of heart and decide to assist the government against the other;" this decision was "necessarily an abuse of discretion") (emphases added).

---

[4] The court also took into account the fact that co-counsel in the case had no prior relationship with Harris and therefore could freely cross examine him at Camisa's trial, if necessary, without any possibility of a conflict of interest. *Id.* at 1430 (citing *Cunningham*, 672 F.2d at 1070). *See* Section C below.

9

Under the circumstances, then, if Mr. SanFilippo insists on his constitutional right to the counsel of his choice, the Court should credit a knowing and intelligent waiver on his part. As this Circuit has made clear, such a waiver includes waiving the right to cross examine with full vigor the lawyer's former client who becomes a government witness, should that possibility arise at trial. *See United States v. Armedo-Sarmiento*, 524 F.2d 591, 592-93 (2d Cir. 1975); *United States v. Perrone,* No. 05 CR 774 (RPP), 2007 WL 1575248, at *9-10 (S.D.N.Y. May 29, 2007 ("[T]he Second Circuit has, in the past, sanctioned cross-examination of witnesses by, and argument from, attorneys who had previously represented those witnesses. It is equally clear that the cross examination cannot go into matters that might be the subject of attorney-client confidentiality without a waiver from the witness to be cross-examined.") (citations omitted).

### C. Additional Factors Make the Possibility of an Actual Conflict Remote or Perhaps Nonexistent in This Case

Not only is there no actual conflict of interest in this case, but the possibility of such a conflict arising appears to be remote at most. Two factors, in particular, minimize the possibility that any conflict of interest will ever materialize in Mr. O'Brien's representation of Mr. SanFilippo.

First, the firm's prior representation of Mr. Mann, from July 2016 to the arraignment in December, was relatively limited. Although in July the government served Mr. Mann with a grand jury subpoena to produce records and give testimony, it never followed up with either request and had no discussions with Mr. O'Brien or Ms. Pope about Mr. Mann until shortly before the arraignment. As a result, Mr. O'Brien and Ms. Pope met Mr. Mann only once prior to the arraignment, in July 2016, for approximately two hours.[5] O'Brien Dec. at ¶ 5. Thus, even if

---

[5]  By contrast, the firm's representation of Mr. SanFilippo has been extensive, encompassing not only a day-long proffer to the government in July 2016 but also many hours

Mr. Mann was to testify as a government witness in the trial of this matter (which is conjectural), it is unlikely that Mr. O'Brien would be limited in his cross-examination by the attorney-client privilege. *See United States v. Castellano,* 610 F.Supp. 1137, 1147 (S.D.N.Y. 1985) ("the relevant intensity of the attorney's representation of the persons involved" is relevant to honoring a defendant's choice of counsel) (citing *Cunningham*, 672 F.2d at 1070-71).

More fundamentally, Mr. O'Brien and Ms. Pope could remove themselves from anything having to do with Mr. Mann, which would eliminate the potential conflict altogether. For example, Mr. O'Brien's partner Adam Ford could freely conduct the cross examination of Mr. Mann and handle all other aspects of his testimony. Mr. Ford is now a member of Mr. SanFilippo's trial team, but he never represented Mr. Mann except for the limited purpose of assisting Mr. O'Brien on the day of the arraignment and then helping to obtain new counsel for Mr. Mann. Prior to the arraignment date, Mr. Ford had no communication with Mr. Mann, and no communication with Mr. O'Brien or Ms. Pope about Mr. Mann. Mr. Ford also has not been and will not be informed of the contents of any of Mr. O'Brien's or Ms. Pope's pre-arraignment communications with Mr. Mann. O'Brien Dec. at ¶¶ 7-8 and Exhibits A and B (Declaration of Suzanne Pope and Adam Ford). Accordingly, Mr. Ford would be free to vigorously cross examine Mr. Mann if the need arose. Alternatively, it is within the discretion of the Court to require separate counsel to take on these tasks, which would also eliminate any possible conflict.

There is ample precedent in the Second Circuit for these types of alternative arrangements. *See Camisa,* 969 F.2d at 1430 (Camisa's trial counsel at the same time represented a potential government witness against Camisa; however, his co-counsel, having no

---

devoted to understanding the facts and circumstances that will underpin Mr. SanFilippo's defense. The firm's trial team, and Mr. O'Brien in particular, have established a strong and trusting relationship with Mr. SanFilippo. O'Brien Dec. at ¶¶ 2-3.

11

prior relationship with Harris, "could handle objections on direct examination and all cross examination of Harris" without the possibility of conflict); *Cunningham*, 672 F.2d at 1070 (defense counsel who was a possible trial witness permitted to conduct pre-trial discovery and preparation for trial, but not "to be the attorney of record or conduct the trial, or sit at counsel table").

### II. Mr. Mann's Attorney-Client Privilege Will Be Fully Protected in the Event Mr. O'Brien Represents Mr. SanFilippo in This Case

Although this firm no longer represents Mr. Mann, he retains the full protections of the attorney-client privilege that formerly protected their communications. Absent his waiver of the privilege,[6] Mr. Mann can rely on these protections even in the unlikely event he testifies against Mr. SanFilippo. As the Second Circuit explained in a similar context: "If the appellants do elect to proceed with [the conflicted attorneys] as their attorneys, it is understood that the witnesses will be entitled to full protection in preserving the confidentiality of their privileged communications with these attorneys, and they may refrain from answering any questions from [the conflicted attorneys] which are based on privileged communication." *Armedo-Sarmiento*, 524 F.2d at 593. *Accord, Perrone*, 2007 WL 1575248, at *9-10; *Castellano,* 610 F.Supp. at 1148.

Any concern for Mr. Mann's attorney-client privilege is speculative, for reasons set forth above. Moreover, substituting Mr. Ford (or separate counsel) for Mr. O'Brien in any cross examination of Mr. Mann would eliminate the attorney-client issue from the trial. In any event, Mr. O'Brien is obligated to respect Mr. Mann's privilege under all circumstances, and he takes that responsibility seriously.

---

[6] To date, we have not been informed that Mr. Mann intends to waive the attorney-client privilege. This Memorandum assumes that Mr. Mann will not waive the privilege at the *Curcio* hearing.

12

Accordingly, Mr. Mann should be afforded the opportunity at the *Curcio* hearing to waive any objection arising out of concerns for the attorney-client privilege.

### Conclusion

For all of the aforementioned reasons, as well as those set forth in the SanFilippo Letter: (1) the government's letter request to disqualify Mr. O'Brien should be denied; (2) at the upcoming *Curcio* hearing, scheduled for February 3, 2017, Mr. SanFilippo should be allowed the opportunity to waive any possible conflict of interest arising out of Mr. O'Brien's prior representation of Mr. Mann; and (3) at the same hearing, Mr. Mann should be allowed the opportunity to waive any objection arising out of concerns for the attorney-client privilege.

Dated: February 1, 2017
      New York, NY

Respectfully submitted,

_____
Kevin J. O'Brien
Ford O'Brien, LLP
Attorney for Defendant
85 Broad Street, 28th Floor
New York, NY 10004
(212) 858-0040
Kobrien@fordobrien.com

13