JMK: WMP/ALC/LHE/SME
F: #2016R00505

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                  *Plaintiff,*

  - against -

MARK NORDLICHT,
DAVID LEVY,
URI LANDESMAN,
JOSEPH SANFILIPPO,
JOSEPH MANN,
DANIEL SMALL and
JEFFREY SHULSE,

                  *Defendants*.
----------------------------------------------------------------X

**DECLARATION**

16 CR 640 (DLI)

### DECLARATION OF ADAM FORD, ESQ. IN SUPPORT OF MR. SANFILIPPO'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISQUALIFY HIS COUNSEL OF CHOICE

I, Adam Ford, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an attorney in good standing admitted to practice in the State of New York and in the United States District Court for the Eastern District of New York. I represent Joseph SanFilippo in the above-referenced matter, and submit this declaration in support of Mr. SanFilippo's Memorandum in further Opposition to the Government's Motion to Disqualify Kevin O'Brien from representing him.

2.     By virtue of being Kevin O'Brien's law partner, I learned that Mr. O'Brien began representing Mr. SanFilippo on or about June 13, 2016. About a month later, on or about July 5, I learned that Joseph Mann, another employee of Platinum Management had also retained Mr. O'Brien.

1

3. Immediately upon learning about my law partner's representation of two employees from the same company that were involved in the same investigation being conducted by the United States Attorney's Office, I inquired into whether there was any potential conflict in simultaneously representing these two individuals. Mr. O'Brien explained to me that based on the information he had learned from representing Mr. SanFilippo for the prior month and background information about Mr. Mann's role at Platinum, he did not believe there was the potential for any conflict.

4. Immediately after starting to represent both Messrs. SanFilippo and Mann, Mr. O'Brien conveyed to me that he informed the Government of his joint representation. Mr. O'Brien thereafter reported to me that the Government agreed there was no conflict in his simultaneous representation of both these individuals.

5. Both Mr. O'Brien and myself have separate practices representing separate clients. On certain matters we will assist each other, but I was particularly busy on other matters during the second half of last year, and did not assist Mr. O'Brien in any way in his representation of Mr. SanFilippo or Mr. Mann.

6. Prior to the date of the indictment and arraignment, I never had a single correspondence with either Mr. SanFilippo or Mr. Mann, never spoke with Mr. O'Brien (or anyone else at our firm) about any specifics of the representation, and never reviewed any documents related to either representation. Indeed, time records from our firm indicate that I did not bill any time to either representation prior to the date of the indictment.

7. While I knew that Mr. O'Brien had had numerous meetings and interactions in connection with his representation of Mr. SanFilippo, I had no sense that Mr. O'Brien had done any work in connection with his representation of Mr. Mann. Indeed, Mr. O'Brien had

indicated to me prior to the indictment that the Government never asked to speak with Mann, and did not appear to have any interest in Mr. Mann even as a witness. As such, it was my understanding that although Mr. O'Brien was representing Mr. Mann, because of the Government's lack of interest in him as a witness in its investigation, very little work, if any, was being done in this regard.

8. At no time was I aware that the Government intended on indicting either man. On the day of the indictment, Mr. O'Brien was surprised to learn that the Government had indicted both Messrs. Mann and SanFilippo. As soon as learning about their arrests, Mr. O'Brien asked if I could assist him in representing both men at the arraignment that day.

9. I met both Messrs. SanFilippo and Mann for the first time after their arrest in the courthouse on the day of the arraignment.

10. At no time did I have any conversations with Mr. Mann about the subject matter of the indictment. On the day of the arraignment, we discussed the logistics of the arraignment and bail conditions. Mr. Mann and I had several conversations following the arraignment, but the subject matter never touched upon the subject matter of the indictment, but rather was limited to logistical issues regarding bail, and the issue of a potential conflict that arose given the indictment.

11. About a week after the arraignment, I sat in on a meeting with Mr. Mann and his present counsel, Benjamin Fischer, Esq. before Mr. Mann had decided who he wanted to hire to replace Mr. O'Brien. During this meeting, we discussed several administrative matters not touching the subject matter of the indictment. After this preliminary discussion, Mr. Fischer asked me to step out of the room so that they could discuss matters which would be attorney-client communications. At that point, I left the room.

12. I do not believe I am in possession of any attorney-client communications belonging to Mr. Mann and have no intention of ever learning about any such communications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 1, 2017
      New York, NY

By: *[signature]*
Adam Ford, Esq.
Ford O'Brien LLP
85 Broad Street, 28th Fl.
New York City, NY 10004
(212) 858-0040
aford@fordobrien.com

4