**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8120**

WRITER'S EMAIL ADDRESS
williamburck@quinnemanuel.com

April 14, 2017

**VIA ECF AND HAND DELIVERY**

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Nordlicht, et al.*, 16-cr-640 (DLI)

Dear Chief Judge Irizarry:

We write on behalf of Defendant Mark Nordlicht pursuant to the Court's April 10, 2017 order.

## I. IT IS NOW THE GOVERNMENT'S BURDEN TO NEGATE THE *PRIMA FACIE* CASE OF A VIOLATION OF GRAND JURY SECRECY.

By ordering a show cause hearing on May 12, 2017, we understand the Court to have determined that Mr. Nordlicht has established a *prima facie* case that government agents may have participated in leaking grand jury information. *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989) (show cause hearing follows establishment of *prima facie* case of Rule 6(e) violation). Now the burden shifts to the government to present evidence that demonstrates government agents were not involved in the leaks. *Id.* (at show cause hearing, "burden shifts to the Government to come forward with evidence to negate the *prima facie* case"). If the government fails to meet its burden, the Court would then be in a position to consider an appropriate remedy. *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1076 (D.C. Cir. 1998) (following finding of violation, "movants may then participate in determining the appropriate remedy"); *see also United States v. Walters*, No. 16-cr-338 (S.D.N.Y. Nov. 17, 2016) (Dkt. No. 46) (at time of ordering hearing, court "need not focus on the scope of any remedial relief if misconduct were to be found").

If the government contests the *prima facie* case, Mr. Nordlicht is entitled to discovery in advance of the May 12 hearing. *See, e.g.*, *United States v. Pimental*, 199 F.R.D. 28, 37 (D. Mass. 2001) (defendants "entitled to discovery to determine the scope and possible impact of the Rule 6(e) violations"). We note that despite several requests dating back to February of this year, the government has not turned over any information regarding the leaks.

If the government instead concedes the leaks or otherwise chooses not to contest them, discovery is still required to enable Mr. Nordlicht to demonstrate prejudice from the leaks. *Id.*;

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Fed. R. Crim. P. 6(e)(3)(E)(ii) (authorizing disclosure of grand jury materials to "a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury"). As explained below, it is our position that the leaks have materially prejudiced Mr. Nordlicht in a variety of significant ways.

## II. THE LEAKS PERMANENTLY ALTERED THE EVIDENCE IN THIS CASE.

The series of disclosures described in Mr. Nordlicht's April 7 letter caused irreparable prejudice because they affected the evidence that was available to the grand jury and that will be available at trial. The Indictment alleges that Mr. Nordlicht systematically inflated the values of Platinum Partners' investments as part of a scheme to defraud investors. *See, e.g.*, Indict. ¶¶ 43–52. It should go without saying that, in a case alleging overvaluation of investments, deliberate government conduct that suppressed the value of those investments causes clear and unacceptable prejudice. There can be no dispute that proclamations such as "[f]ederal prosecutors in Brooklyn are investigating whether" Platinum Partners "was a Ponzi scheme," Dkt. No. 107-4, at 2, and that Platinum's oil investments are "at the center of a probe by federal prosecutors in Brooklyn," Dkt. No. 107-5, at 3, sow doubt in the marketplace about Platinum's investments and artificially suppress valuations. The grand jury's deliberations thus unavoidably were tainted by evidence that would not exist but for the articles.

The prejudice continues today. For example, the leaks and resulting articles prevented Platinum's investments from ever realizing their full value, which harms investors and deprives Mr. Nordlicht of evidence that would have contradicted accusations in the Indictment. In fact, the leaks themselves have caused much of the damage for which the government now seeks to blame the defendants. And by encouraging reporters to spread false accusations that Platinum was a Ponzi scheme, the leakers caused a series of prejudicial headlines tagging Platinum with that inflammatory label, thus poisoning the jury pool. Because the prejudice from this conduct cannot be reversed, there is no adequate remedy short of dismissal.

## III. DISMISSAL IS WARRANTED, BUT OTHER REMEDIES ARE AVAILABLE.

As noted in Mr. Nordlicht's April 7 letter, Dkt. No. 107, various remedies are available where government agents have leaked grand jury information, ranging from dismissal of the indictment to suppression of grand jury material, contempt, and other equitable relief, *Id.* at 5 (collecting cases). In this case, we believe dismissal of at least those charges in the Indictment directly tied to the leaks would be appropriate. Counts One through Five of the Indictment all charge Mr. Nordlicht with defrauding Platinum's investors through, for example, overvaluation, payment of redemptions with new investor subscriptions, loans among funds, and other alleged conduct, all of which was the focus of the leaks.[1]

---

[1] Moreover, recurring government misconduct spanning several cases justifies dismissal. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988) (suggesting that "a history of prosecutorial misconduct, spanning several cases" could justify dismissal). Even beyond *Walters*, leaks by government agents are an increasingly common and vexing problem. *See, e.g.*, Dkt. No. 107, at 2 n.1; Kara Scannell, "Lawyer Says DOJ, SEC to Probe Leaks in Rajaratnam Case," Wall St. J., May 26, 2010 (reporting government opened internal investigation into leaks during the investigation into Raj Rajaratnam), https://goo.gl/32JqG6; Christie Smythe, (footnote continued)

Alternatives to dismissal are also available, including:

- Suppression of evidence collected during the June 22, 2016 search of Platinum's office and other evidence that was leaked, and preclusion of government arguments that rely on such evidence. *See United States v. Coughlan*, 842 F.2d 737, 740 (4th Cir. 1988) (suppression of grand jury material may be appropriate to remedy Rule 6(e) violation).

- Recusal, and preclusion from serving as government witnesses, of government agents complicit in the leaks. *See, e.g.*, *In re Grand Jury Investigation (90-3-2)*, 748 F. Supp. 1188, 1206 (E.D. Mich. 1990) (district court may disqualify parties who violate grand jury secrecy "under its inherent and supervisory powers, if not [Rule 6(e)] itself").[2]

## IV. DISCOVERY IS NEEDED TO DETERMINE THE FULL EXTENT OF PREJUDICE AND THE APPROPRIATE REMEDY.

Discovery from the government of all information in its possession, custody, or control concerning the leaks is necessary to determine the full extent of the prejudice caused by the leaks and therefore to fashion an appropriate remedy. The government already conceded over a month ago that it is investigating the leaks, so by now, it must have collected relevant documents and information that easily could be shared with the defense, at least on a rolling basis.

In sum, Mr. Nordlicht respectfully submits that (1) in the event the government decides to contest that its agents were involved in the leaks, the Court should order the government to produce discovery sufficiently in advance of May 12 to ensure that the defense has adequate time to prepare for the hearing; and (2) in the event the government decides not to contest that its agents were behind the leaks, the Court should nonetheless order full discovery in order to illuminate the full extent of the prejudice and enable the Court to fashion an appropriate remedy. Mr. Nordlicht believes the prejudice from the leaks justifies dismissal of Counts One through Five of the Indictment but acknowledges that lesser remedies may be available depending on the facts and impact of the leaks, which can be fairly established only after discovery.

Respectfully submitted,

/s/ William A. Burck
William A. Burck

cc: All counsel of record (by ECF)

---

"Retrophin Founder Said Probed Over Securities Dealings," Bloomberg, Jan. 7, 2015 (reporting Martin Shkreli under investigation 11 months before he was indicted), https://goo.gl/aoS5Eq; Sasha Damouni et al., "As Feds Saw Inside Trader in Valvani, Friends Saw Family Man," Bloomberg, June 22, 2016 (discussing Sanjay Valvani, who lost his job and his reputation due to leaks that he was under investigation, and who tragically committed suicide shortly after he was indicted), https://goo.gl/ZPm4fG.

[2]   Such alternatives to dismissal are not mutually exclusive and should also include extensive voir dire, detailed jury questionnaires, and additional peremptory strikes of jurors for Mr. Nordlicht. *See Campbell v. Bradshaw*, 674 F.3d 578, 593–94 (6th Cir. 2012) (voir dire is "the primary tool to determine . . . the impact of the publicity"); *United States v. Bonanno*, 177 F. Supp. 106, 123 (S.D.N.Y. 1959) (granting defendant 42 peremptory challenges and government only six because of pretrial publicity).

3