# LEVINE LEE LLP

### NEW YORK

650 Fifth Avenue
New York, New York 10019
212 223 4400 main
212 223 4425 fax
www.levinelee.com

**Seth L. Levine**
212 257 4040 direct
slevine@levinelee.com

May 3, 2017

**VIA ECF AND FEDEX**[1]
Honorable Dora L. Irizarry, Chief Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Daniel Small, et al.,* No. 1:16-cr-00640-DLI

Dear Chief Judge Irizarry:

We respectfully submit this letter on behalf of Defendant Daniel Small in connection with Defendant Mark Nordlicht's motion regarding potential leaks of grand jury information in violation of Federal Rule of Criminal Procedure ("Rule") 6(e) (the "Motion"). ECF Nos. 107 & 112. At the March 27, 2017 status conference, the Government represented to the Court that it was investigating the alleged leaks raised in the Motion and requested a briefing schedule so that it could "respond in writing formally to any of the allegations." Mar. 27, 2017 Status Conference Tr. at 35:19-36:15 (ECF No. 103). Mr. Small waited to review the Government's redacted opposition ("Opposition") to the Motion to learn the results of the investigation prior to taking a position. Based on this review, Mr. Small respectfully submits that the evidence establishes a *prima facie* case that the Government violated Rule 6(e) and obstructed the administration of justice. In addition to the evidence submitted by Mr. Nordlicht, the *prima facie* showing is supported by the Government's failure to deny categorically that there were improper leaks of confidential law enforcement information to the media, as well as the Government's inadequate and incomplete investigation into these serious matters. Mr. Small therefore joins in the Motion and requests that the Court conduct an evidentiary hearing, following discovery, to determine whether any Government misconduct occurred. We also write to address several additional issues.

First, the Court should reject the Government's[2] assertion that its allegedly unlawful conduct does not affect the counts in the Indictment relating to the "Black Elk Bond Scheme." *See* ECF No. 122

---

[1] Pursuant to the Court's Orders in this case and Individual Motion Practice and Rules, we have forwarded to Chambers two courtesy copies of this letter via Federal Express.

("Gov't Opp.") at 4 n.3. As the Government notes in its Opposition, the Indictment alleges two distinct schemes: (1) an alleged scheme to defraud investors and prospective investors in several Platinum Partners funds, which the Indictment refers to as the "Fraudulent Investment Scheme," *see* Indictment ¶ 42; and (2) the Black Elk Bond Scheme, *i.e.*, an alleged scheme to defraud third-party holders of Black Elk Energy Offshore Operations, LLC bonds, *see id.* ¶ 73. Unlike the other moving Defendants, Mr. Small is not charged in the Fraudulent Investment Scheme; rather, he is only charged in the Black Elk Bond Scheme. Nevertheless, Mr. Small, like the Court and the other Defendants, has an interest in discovering whether the Government violated *all* of the Defendants' rights through improper and unlawful disclosures of Rule 6(e) material and other confidential law enforcement information.

Second, the Court should reject the Government's argument that Defendants must show prejudice to obtain a hearing. *See* Gov't Opp. at 18-23. Just a few months ago, in *United States v. Walters*, a case on which the Government relies, *see* Gov't Opp. at 13, 21, the United States District Court for the Southern District of New York rejected this same argument in granting the defendant's application for an evidentiary hearing over the Government's objection. *See United States v. Walters*, No. 16-CR-338 (PKC) (S.D.N.Y. Nov. 17, 2016) (ECF No. 46) (Letter Exhibit A at 1.) In that case, like here, the defendant's application for a hearing was based on several newspaper articles concerning the matters under investigation, and the Court held that an evidentiary hearing was necessary "based in part on the timing and content of the newspaper articles that were suggestive of a leak of grand jury subpoenas protected under Rule 6(e), Fed. R. Crim. P." *United States v. Walters*, No. 16-CR-338 (PKC) (S.D.N.Y. Mar. 1, 2017) (ECF No. 104) (Letter Exhibit B at 10.)

Third, the *prima facie* showing is stronger in this case than in *Walters* (and stronger than each of the cases cited in the Government's Opposition) because, in addition to the timing and content of the articles suggesting that the Government may have acted improperly, the Federal Bureau of Investigation's ("FBI") pattern and practice of leaking Rule 6(e) and other confidential law enforcement information had not come to light until after the *Walters* Court granted the defendant's application for an evidentiary hearing. Because of the *Walters* evidentiary hearing, it was revealed that an FBI Supervisory Special Agent (the "Supervisory Agent") leaked sensitive information regarding a criminal insider trading investigation to reporters at various media outlets. *See id.* at 19 ("But for the grant of defendant's initial motion directed to the leaks, the misconduct at issue may never have come to light. Thankfully, the outing of the leaker may serve to deter other faithless federal agents."); *see also id.* at 1, 10. The evidentiary hearing also revealed that the Supervisory Agent and other FBI agents may have improperly leaked confidential information in multiple other cases. *See id.* at 17-18. Notably, the Government concedes that the Supervisory Agent—who has an admitted history of leaking information and is currently under criminal investigation for such conduct—was responsible for supervising the FBI agents conducting the investigation in this case. *See* ECF No. 122-1, ¶ 4.

In addition, despite the Government's claims to the contrary, *see* Gov't Opp. at 11-14, the news articles demonstrate that an attorney or agent of the Government disclosed information that revealed the strategy or direction of a grand jury investigation. For example, in a July 28, 2015 article published in the *New York Post*, journalist Kevin Dugan stated, "[i]nvestigators are probing whether the values of some of Platinum's investments were known to be worth less than what the fund told Investors – and if withdrawals requested were paid with cash coming in from new investors, a person briefed on the investigation told The Post." *See* ECF No. 107-4, at 2. An April 2016 *Reuters* article specifically

---

[2] Our reference to the "Government" includes the prosecutors, law enforcement agents and other Government employees, including SEC attorneys and investigators, involved in the investigation of this case.

mentioned a "broad subpoena from prosecutors" and the fact that Reuters was permitted to review "internal company emails." *See* ECF No. 122-5, at 4, 5.[3] Thus, the evidence before the Court amply establishes a *prima facie* case.

Fourth, the Government's opposition demonstrates that its investigation into the serious issues raised in the Motion was inadequate and incomplete, especially given the evidence developed in *Walters* several months ago that the FBI, including the Supervisory Agent, violated Rule 6(e), Department of Justice policies and, potentially, the criminal law. *See* United States Attorneys' Manual ("USAM") § 1-7.530, Disclosure of Information Concerning Ongoing Investigations ("[C]omponents and personnel of the Department of Justice shall not respond to questions about the existence of an ongoing investigation or comment on its nature or progress, including such things as the issuance or serving of a subpoena, prior to the public filing of the document."); *see also* USAM § 1-7.500, Release of Information in Criminal and Civil Matters – Non-Disclosure ("At no time shall any component or personnel of the Department of Justice furnish any statement or information that he or she knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding."). Here, as in *Walters*, the Government's "investigation" into these matters appears to have been limited to one conflicted member of the prosecution team merely asking several other prosecution team members whether they "disclosed to any member of the press any information as a result of the grand jury investigation in this case." *See* ECF No. 122-1, ¶¶ 11-13; *cf. United States v. Walters*, No. 16-CR-338 (PKC) (S.D.N.Y. Mar. 1, 2017) (Letter Exhibit B at 20) ("While the government's artful opposition to Walters' initial motion contained no affirmative statements that were false, it confined itself to denials from limited sources and never disclosed high level concerns over FBI leaks."). While Mr. Small has no reason to believe that the Assistant United States Attorneys responsible for this investigation engaged in any misconduct, it is inappropriate for attorneys personally involved with a case to investigate themselves and the other members of their investigatory team. Rather, such an investigation should be conducted by conflict-free attorneys and agents with an order to report their findings to the Court. *See, e.g., In re United States*, 441 F.3d 44, 51 (1st Cir. 2006) (U.S. Attorney's Office requested that DOJ's Public Integrity Section conduct inquiry as to whether "anyone in the inner circle of the investigation" had leaked grand jury information to the media. The Public Integrity Section, in turn, referred the matter to the DOJ's Inspector General and the DOJ's Office of Professional Responsibility (OPR), who conducted the investigation).

Moreover, it is important to note that the Government does not actually deny that Government sources improperly leaked confidential law enforcement information to the press. Rather, the Government simply suggests that the press *could* have obtained information from other sources. *See* Gov't Opp. at 12 ("all of the information contained in the cited articles . . . could have derived just as plausibly from sources other than the grand jury's investigation"); *see id*. at 14 ("all of the information in the articles could just as likely have come from non-governmental sources."); *see also id*. at 16 (same). The Government's speculation is irrelevant to the Court's determination as to whether a *prima facie* showing has been made.

Finally, the Court should defer decision on a remedy until after it conducts an evidentiary hearing and determines whether the Government engaged in misconduct. Given that the Government has not produced hearing-related discovery—or even unredacted copies of its Opposition and

---

[3] The *Reuters* article was published two months prior to the execution of the June 2016 search warrant. Accordingly, the information contained in the article could not have been derived from the "face of the search warrant and its attachments," as the Government suggests. *See* Gov't Opp. at 12.

Declaration—to the Defendants, and the Court has not made any findings concerning the alleged Government misconduct, any consideration of the appropriate remedy at this stage is premature.

Accordingly, the Court should hold an evidentiary hearing to address whether the Government violated its obligations under Rule 6(e) and obstructed the administration of justice through the improper and unlawful disclosure of confidential law enforcement and grand jury information.

Respectfully submitted,


/s/ Seth L. Levine
Seth L. Levine
Scott B. Klugman

cc:      All Counsel of Record (*via ECF*)