# LEVINE LEE LLP

### NEW YORK

650 Fifth Avenue
New York, New York 10019
212 223 4400 main
212 223 4425 fax
www.levinelee.com

**Seth L. Levine**
212 257 4040 direct
slevine@levinelee.com

August 18, 2017

**VIA ECF AND FEDEX**
The Honorable Dora L. Irizarry
Chief Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    *United States v. Daniel Small, et al.,* No. 1:16-cr-00640-DLI

Dear Chief Judge Irizarry:

      We represent Defendant Daniel Small and respectfully submit this letter pursuant to the Court's August 10, 2017 Order granting the Defendants leave to file a submission in further support of their individualized requests for a bill of particulars and for the production of *Brady* material. (Dkt. No. 173).

      As the Court is aware, the Indictment in this matter charges "two separate schemes": (1) a broadly alleged scheme concerning the valuation of Platinum assets and (2) a narrowly alleged scheme concerning a consent solicitation that involved an offer to repurchase Black Elk bonds and to amend the terms of the bond indenture ("Consent Solicitation"). (*See* Indict. at ¶ 41). Mr. Levy's requests for a bill of particulars and *Brady* material and his subsequent brief (*see* Dkt. Nos. 166, 192), focused almost exclusively on the first alleged "valuation" scheme. Mr. Small, however, is charged only in connection with the second alleged scheme relating to the Consent Solicitation. (*See* Indict. at ¶ 73).

      There are significant issues in this case concerning knowledge, intent and the materiality of the alleged fraudulent statements. Mr. Small believes that the Government is in possession of a considerable amount of information relating to these issues. First, the Consent Solicitation contained a cash tender offer pursuant to which Black Elk offered to repay each of the purported victims, *i.e.*, the Black Elk bondholders, the full-face value of their bonds plus any outstanding interest. In fact, as the Indictment concedes, Black Elk did repay every bondholder who tendered the full value of the bond plus all the interest due. (*See* Indict. at ¶¶ 83,85). Second, the Consent Solicitation was prepared and reviewed in consultation with various professionals, including outside counsel for Black Elk. Third, the tabulation of the vote under the Consent Solicitation was performed by a third-party tabulation agent from a major financial institution with no affiliation to Platinum or Black Elk.

Accordingly, Mr. Small's requests are narrowly drawn to obtain information that is not only relevant to the above-listed issues, but crucial to the preparation of his defense. As discussed in more detail below, Mr. Small seeks a bill of particulars requesting that the Government identify the bondholders alleged to have been defrauded in this case. Given that the vast majority of discovery pertains to the alleged valuation scheme in which he was not involved and that bonds are commonly held through third-party nominees, it is extremely difficult for Mr. Small to discern from the voluminous discovery this basic information underlying the alleged scheme. As to Mr. Small's *Brady* requests, he has asked the Government to produce all materials demonstrating that: (1) the bondholders were not aware of the alleged false statements in the Consent Solicitation and/or that such statements did not affect their voting decisions; (2) Mr. Small and his alleged conspirators received and relied on the advice of counsel in connection with the Consent Solicitation; and (3) the tabulation agent erred in its duties, including to review the Consent Solicitation.

**A. The Court Should Require the Government to Provide a Bill of Particulars Identifying the Alleged Victims of the Charged Scheme.**

Mr. Small requested identifying information for each bondholder that the Government alleges to be a victim in the Black Elk scheme.[1] (Dkt. No. 173 at 3). Courts routinely grant bill of particulars requesting the victims' identities. *See United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (Jencks Act material was not adequate substitute "for a straightforward identification in a bill of particulars of the identity of victims of offenses that the prosecution intends to prove."); *United States v. Solnin*, 81 F. Supp. 3d 193, 209 (E.D.N.Y. 2015) (requiring bill of particulars to identify alleged victims in mail and wire fraud prosecution to enable defendant to prepare for trial and prevent unfair surprise); *see also United States v. Avellino*, 129 F. Supp. 2d 214, 221 (E.D.N.Y. 2001) (ordering identification in a bill of particulars of tax returns Government intended to use at trial to establish conspiracy). Similarly, here, the Government should be compelled to identify the victims so that Mr. Small can avoid unfair surprise and adequately prepare for trial.

In this case, the difficulty of the search for the identity of the alleged victims is compounded by the fact that: (1) the bondholders appear to have held their bonds through third-party nominees and (2) the great majority of the 15 million pages disclosed by the Government thus far appear to have no relevance whatsoever to Black Elk. *See United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) (finding that the Government "did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents" were of importance). Further still, the Government has given no indication of whether it has produced discovery containing the identities of *all* of the bondholders. (*See* Government's Opp. to Defs.' Mot. for Bill of Particulars ("Gov't Br.") at 14-15). Therefore, it is quite possible that Mr. Small is engaged in a futile task of searching for information that he does not have.

The Government's arguments as to why it should not be ordered to provide this basic information are without merit. The Government merely argues that "Small is not entitled to this" material and that *some* of this information has been included in prior productions. (*See* Gov't Br. at 14-

---

[1] Mr. Small also requested particulars regarding the alleged "negative" statements disseminated about Black Elk, referenced in Paragraph 78 of the Indictment. (Dkt. No. 173 at 3). The Defendants' joint submission addresses this request (Dkt. No. 192 at 8-9) and so Mr. Small does not raise it here in order to avoid duplication.

15). In so doing, the Government gives the impression that the class of alleged victims in the Black Elk scheme is easily identifiable. (*See* Gov't Br. at 13-15). To the contrary, the universe of potential alleged victims includes all "third-party holders of the [Black Elk] Bonds" – bonds which were publicly traded on the open market. (*See* Indict. at ¶¶ 41, 74).

The Government also wrongly claims that it has made a number of disclosures that identify the victim bondholders by name. (*See* Gov't Br. at 14-15). For instance, the Government points to its May 11, 2017 disclosure letter. However, that letter lists the names of 75 different entities without any description as to the relevance of these entities and no indication whether and which of the named entities are the supposed victims. (*See* Dkt. No. 138). It is especially unclear whether the Government contends that any of these entities are alleged victim-bondholders because the Government also characterized them as potential investors connected to the separate alleged valuation scheme. (*See* Gov't Br. at 14). The Government also references discovery letters dated June 20, 2017 and July 3, 2017, each of which contains the name of precisely *one* entity. (*See* Dkt. Nos. 161, 165).

Accordingly, the Court should grant Mr. Small's request for a bill of particulars.

**B. The Court Should Order the Government to Comply with *Brady.***

The Government has a Constitutional duty to disclose evidence favorable to the accused that is material to guilt "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial *or to use the information to obtain evidence for use in the trial*." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).[2] Furthermore, the Department of Justice's guidelines direct the Government to take a more liberal approach to the disclosure of exculpatory and impeachment material than law requires. (*See* United States Attorney's Manual ("USAM") § 9-5.001 (Policy Regarding Disclosure of Exculpatory and Impeachment Information)). The USAM "requires disclosure by prosecutors of information *beyond* that which is 'material' to guilt." *Id*. at § 9.5.000(C) (emphasis added). That is, prosecutors must "err on the side of disclosure in close questions of materiality" and provide "greater disclosure in advance of trial . . . of exculpatory information that is inconsistent with any element of any charged crime." *Id*. at § 9.5.000(F). Moreover, the policy requires that exculpatory information "be disclosed reasonably promptly after it is discovered," *Id*. at § 9.5.000(D)(1), and "regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal." *Id*. at § 9-5.001(C)(1-2).

    1. Brady *Requests 3 – 5 & 7*.

Mr. Small believes that the Government is in possession of undisclosed exculpatory evidence showing that the bondholders were not aware of the alleged false statements in the Consent Solicitation or that these statements were not material to their decision as to whether to tender their bonds for full payment and vote in support of the Consent Solicitation. Specifically, Mr. Small requested the disclosure of information that bondholders: (1) were unaware of the Consent Solicitation or believed par was fair value for the bonds; (2) believed that the amount of bonds controlled by Platinum was

---

[2] In addition, pursuant to Rule 16 the Government must produce documents within its possession that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Smith*, 629 Fed. App'x 57, 60 (2d Cir. 2015). The materiality standard is normally not a heavy burden and asks only whether the evidence "could be used to counter the government's case or to bolster a defense." *United States v. Stevens,* 985 F.2d 1175, 1181 (2d Cir. 1993).

immaterial to their voting determination; (3) determined to tender their bonds (or not) due to factors other than the disclosure of Platinum's equity and bond ownership; or (4) were aware of Platinum's alleged control of bonds. (*See* Dkt. No. 173 at 2). The Government does not deny that such information exists or is in its possession. (*See* Gov't Br. at 26). Instead, the Government has unilaterally decided that if such information is in its possession, that it is not *Brady*. (*See* Gov't Br. at 26). But, Information that a bondholder based her vote on a reason unrelated to Platinum's disclosure of how many bonds it owned undermines the Government's charge and is necessarily favorable and exculpatory because it demonstrates the disclosure was not material to that bondholder.

Finally, the Government's classification of this category of information as "potential" Jencks Act does not relieve it of its obligation to disclose the materials under *Brady*. (*See* Gov't Br. at 26). "[W]here the Government's obligations under *Brady* collide with its obligations under the Jencks Act, the former must prevail because the teachings of *Brady* arise under the Constitution while the Jencks Act is a mere legislative enactment." *United States v. Coppa,* 267 F.3d 132, 145-46 (2d Cir. 2001). Mr. Small is not seeking all witness statements; rather, he is seeking witness statements that provide information that is, or is likely to lead to, information that is material and/or favorable to his defense.

    2. Brady *Request 6.*

Mr. Small also believes that the Government is in possession of exculpatory evidence showing that he and the other alleged conspirators received and relied on advice of counsel in connection with the Consent Solicitation. Specifically, Mr. Small requested information that tended to demonstrate that he, or his alleged co-conspirators, sought and/or received legal advice from counsel related to: (a) the creation of the Consent Solicitation; (b) amendments to the indenture; (c) information provided to bondholders; (d) requirements for consenting or tendering bonds; (e) representations, warranties or officer certifications made; (f) authorizing fund transfers or (g) any allegation in the indictment. (*See* Dkt. 173 at 2). The Government replied that to the extent such documents exist, they are potentially privileged and will be produced in Rule 16 discovery by the Firewall Team. (*See* Gov't. Br. at 23). Two pages later, the Government stated that they have not identified any such *Brady* material. (*See* Gov't. Br. at 26).

The Government's arguments do not support its failure to disclose these materials. As the Government is aware, there is no privilege protecting these documents because prior to filing this Indictment, it requested that Black Elk waive privilege and provide it with privileged materials. Black Elk complied with that request. *See SEC v. Platinum Mgmt. (NY) LLC*, No. 16-cv-6848(DLI)-(VMS), Dkt. No. 37, Decl. of Craig Smyser at ¶¶ 18-20 ("On December 19, 2016, the Trustee confirmed by email . . . that the Trustee of the Black Elk Litigation Trust waived the privilege as requested by the SEC. The Trustee had agreed to a similar waiver at the request of the Department of Justice."). Therefore, there is no reason to delay the production of these materials to Mr. Small

With respect to the Firewall Team's review, the Defendants and the Government are currently negotiating a process for the provision of potentially privileged materials to the Defendants so that the Defendants can conduct a privilege review. But, to the extent the Government is using this process to disclaim its responsibility to review those materials for *Brady,* that is insufficient to comply with its obligations, as well as this Court's Order that the Government review for and identify any *Brady* material. (*See* May 12, 2017 Status Conference Tr. at 18:23 – 19:24).

3. Brady *Request 8*.

Finally, Mr. Small requested information that the Bank of New York Mellon ("BNYM"), who served as Indenture Trustee and Tabulating Agent for the consent Solicitation, erred in its duties to review disclosures, representations or warranties, and even the Consent Solicitation itself. (*See* Dkt. No. 173 at 2). The Government incorrectly believes that "information 'tending to suggest' any failure" by BNYM to properly factor information it received regarding bond ownership and other disclosures is not *Brady* material. (*See* Gov't Br. at 26). *Brady*, however, is broader than the Government's narrow view. The Government must disclose anything that "tends to exculpate the accused." *Coppa*, 267 F.3d at 139. To the extent information exists that tends to show that BNYM disregarded disclosures, warranties or representations about bond ownership that could call into question the Government's allegations of fraudulent statements and omissions – or Mr. Small's intent – that is *Brady* material and the Government must disclose that information.

        Respectfully submitted,

        */s/ Seth L. Levine*
        Seth L. Levine
        Tracy Lee Dayton

cc:    All Parties via ECF