# LEVINE LEE LLP

1500 Broadway, Suite 2501
New York, New York 10036
212 223 4400 main
www.levinelee.com

**Seth L. Levine**
212 257 4040 direct
slevine@levinelee.com

April 8, 2023

**Via ECF**
The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Nordlicht, et al.*, 16-cr-640

Dear Judge Cogan:

We respectfully submit this letter on behalf of Daniel Small regarding the loss hearing scheduled for April 18, 2023.

While we greatly appreciate the Court's consideration in inviting Mr. Small to participate in this hearing, we respectfully submit that Mr. Small's participation poses certain challenges given the procedural posture of this case.

First, no Presentence Investigation Report ("PSR") as to Mr. Small has been prepared. Accordingly, Mr. Small does not have the benefit of the Probation Department's (or the Government's) positions with respect to Mr. Small, including, but not limited to, the impact of his acquittal on the conspiracy to commit wire fraud charge, which demonstrates that he did not seek to deprive anyone of money or property.

Second, Mr. Small's post-trial motions remain pending. (*See* ECF No. 967.) These motions raise substantial issues as to the soundness of Mr. Small's jury verdict. If the Court grants Mr. Small's post-trial motions, there would be no need for Mr. Small to participate in any loss hearing. And even if the Court declines to grant Mr. Small's requested post-trial relief, the Court could make relevant legal rulings concerning the unique issues raised in Mr. Small's case.

Notwithstanding these challenges, Mr. Small intends to attend the loss hearing. To the extent that Messrs. Nordlicht and Levy have raised arguments relating to loss that may pertain to him, Mr. Small joins in those arguments, but reserves his rights to object to any loss calculation in his PSR once it is prepared and to make any arguments regarding the same pursuant to 18 U.S.C. § 3552(d) and Federal Rule of Criminal Procedure 32(e)–(i).

Mr. Small, however, would like to expand on a legal argument raised in Mr. Nordlicht's recent filing (*see* ECF No. 994 at 12–13), relating to the Government's suggestion that "gain" should be used as a substitute for calculating "loss" under United States Sentencing Guideline 2B1.1(b).  (*See* ECF No. 922 at 8–9.)  Simply put, the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), precludes, as a matter of law, the use of "gain" as a substitute for "loss" in calculating an appropriate Guideline range.  This is because Guideline 2B1.1(b) does not mention "gain" and, given that the Guideline is unambiguous, reliance on an application note that references "gain" is not permitted.

The Supreme Court previously held that courts should treat the Guidelines as legislative rules and the commentary accompanying the Guidelines as "akin to an agency's interpretation of its own legislative rules."  *Stinson v. United States*, 508 U.S. 36, 44–45 (1993).  Prior to *Kisor*, courts therefore deferred to the Guidelines' commentary, as they did with agency interpretations, under what is known as *Auer* or *Seminole Rock* deference and gave it "'controlling weight unless it is plainly erroneous or inconsistent with the [Guideline].'"  *Id.* at 45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *see also Kisor*, 139 S. Ct. at 2408 (stating that the Supreme Court "has often deferred to agencies' reasonable readings of genuinely ambiguous regulations" and "call[s] that practice *Auer* deference, or sometimes *Seminole Rock* deference, after two cases in which we employed it").

But in *Kisor*, the Supreme Court significantly limited *Auer* deference.  *See* 139 S. Ct. at 2408.  First, the Supreme Court held that *Auer* deference applied only to "genuinely ambiguous" regulations.  *Id.* at 2414.  As the Court stated:

> *Auer* deference is not the answer to every question of interpreting an agency's rules.  Far from it.  As we explain in this section, the possibility of [*Auer*] deference can arise only if a regulation is genuinely ambiguous.  And when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation.

*Id.*

Second, even "[i]f genuine ambiguity remains, . . . the agency's reading must still be 'reasonable.'"  *Kisor*, 139 S. Ct. at 2415 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)).  "In other words, it must come within the zone of ambiguity the court has identified after employing all its interpretive tools."  *Id.* at 2415–16.

Third, even if a court finds a genuine ambiguity and that the agency's interpretation is reasonable, it still must "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight."  *Kisor*, 139 S. Ct. at 2416.  Thus, in the wake of *Kisor*, *Auer* deference is often inapplicable and, even when it applies, "a strong judicial role in interpreting rules" (as opposed to wholesale deference) is still required.  *Id.* at 2418.

While the Second Circuit has not yet had occasion to consider Guideline 2B1.1(b) in light of *Kisor*, *see United States v. Williams*, 2023 WL 2613503, at *7 (D. Conn. Mar. 23, 2023) ("[T]he Second Circuit has not yet addressed the weight to be afforded to the commentary after *Kisor*."), the Third Circuit has.  In *United States v. Banks*, the Third Circuit applied *Kisor* to the Sentencing Commission's commentary and found that because the term "loss," as used in Guideline 2B1.1(b), is unambiguous, the commentary regarding "loss" should be "accord[ed]" "no weight."  55 F.4th 246, 258 (3d Cir. 2022); *see also id.* at 262 (holding that "'loss' in the context of U.S.S.G. § 2B1.1 is not ambiguous").

In that case, because there was no "actual loss," the sentencing court relied on Application Note 3(A) and determined the guideline sentencing range by looking to "intended loss."[1] *Banks*, 55 F.4th at 251, 253. In vacating the sentence imposed by the district court, the Third Circuit considered *Kisor* (as well as the Third Circuit's *en banc* decision in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021)) and found that the "ordinary meaning of 'loss' in the context of § 2B1.1 is 'actual loss.'" 55 F.4th at 257. Specifically, the court found that "in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word 'loss' is the loss the victim actually suffered." *Id.* at 258. Accordingly, because Application Note 3(A) "expands the definition of 'loss' by explaining that generally 'loss is the greater of actual loss or intended loss,'" the Third Circuit "accord[ed] the commentary no weight" and remanded the case for resentencing without the intended-loss enhancement. *Id.* at 258, 262.

Although there is a split among the United States Courts of Appeals concerning *Kisor*'s application to the Guidelines, *compare, e.g.*, *Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc) (applying *Kisor*'s framework to the Guidelines), *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021) (same), *and United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc) (same), *with, e.g.*, *United States v. Lewis*, 963 F.3d 16 (1st Cir. 2020) (declining to disturb pre-*Kisor* precedent concerning deference to Guidelines commentary), *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022) (without expressly taking a position on *Kisor*'s impact, vacating the defendant's sentence because the application note's credit card enhancement "contort[ed]" the meaning of "loss" under Guideline 2B1.1), *and United States v. Moses*, 23 F.4th 347 (4th Cir. 2022) (declining to apply *Kisor*'s framework to the Guidelines); *but see United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) (applying *Kisor*'s framework to the Guidelines),[2] the Court should follow the Third, Sixth, and Eleventh Circuits and conclude that *Kisor* applies to the Guidelines.

As the Eleventh Circuit recently observed, "the only way to harmonize [*Stinson* and *Kisor*] is to conclude that *Kisor*'s gloss on *Auer* and *Seminole Rock* applies to *Stinson*." *Dupree*, 57 F.4th at 1275.[3] Further, in addition to running afoul of *Kisor*'s holding as to the limits of agency deference, those decisions finding *Kisor* inapplicable to the Guidelines also defy separation of powers principles. As the Fourth Circuit stated:

> The Supreme Court has long held that defining crimes and fixing penalties are legislative, not judicial, functions. And although the Court has held that the Sentencing Guidelines do not violate this separation of powers, that is so because of the checks on the Sentencing Commission's authority. In fashioning the Sentencing Guidelines, the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit, and the Commission's rulemaking is subject to . . . notice and comment requirements[.] In contrast, in fashioning commentary the Commission acts unilaterally, without that continuing congressional role so vital to the Sentencing Guidelines' constitutionality.

---

[1] *See* U.S.S.G. § 2B1.1 App. Note 3(A) ("Subject to [certain] exclusions . . ., loss is the greater of actual loss or intended loss.").

[2] Although a panel of the Fifth Circuit declined to apply *Kisor* to the Guidelines, *see United States v. Vargas*, 35 F.4th 936 (5th Cir. 2022), the court heard argument in the case *en banc* but has not yet issued a decision, *see United States v. Vargas*, 45 F.4th 1083 (5th Cir. 2022).

[3] *See also Kisor*, 139 S. Ct. at 2411 n.3 (plurality) (listing *Stinson* as an example of the many Supreme Court cases applying *Seminole Rock* deference).

*Campbell*, 22 F.4th at 446 (alteration and ellipses in original) (citations and internal quotation marks omitted). As a result, the decisions holding that the Guidelines commentary is binding, even as to unambiguous, Congressionally-approved Guidelines, improperly "empower the Commission unilaterally to set—not just interpret—the rules for the 'application of the ultimate governmental power, short of capital punishment,' without congressional involvement." *Id.* (quoting *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018)).

Notably, even though the Second Circuit has not specifically addressed *Kisor*'s impact on interpreting the Guidelines, a district court in the Second Circuit applied *Kisor*'s basic framework to the Guidelines in a recent decision. *See Williams*, 2023 WL 2613503, at *6–9 (conducting *Kisor* analysis). Here too, the Court should find *Kisor* applicable to the Guidelines.

And once it does, it should preclude the Government from relying on Application Note 3(B) because the rationale underlying *Banks*'s analysis of Application Note 3(A) is even more compelling with respect to Application Note 3(B). First, the term "gain" does not appear in Guideline 2B1.1(b)(1). Rather, Guideline 2B1.1(b)(1) consists of a table that lists various "loss" amounts with corresponding increases in offense level. *See* U.S.S.G. § 2B1.1(b)(1). As such, the concept of using "gain" as a substitute for loss appears only in the commentary. Specifically, Application Note 3(B) states that "[t]he court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." U.S.S.G. § 2B1.1(b) App. Note 3(B).

As noted above, in *Banks*, the Third Circuit concluded that, as used in Guideline 2B1.1(b)(1), the term "loss" is unambiguous and means actual loss. As the court stated, the ordinary meaning of "loss" as "actual loss" is confirmed by the dictionary definition of loss. *Banks*, 55 F.4th at 257–58 (quoting various editions of *Webster's* dictionary); *see also United States v. McKinney*, 2022 WL 17547467, at *5 (E.D. Mich. Dec. 9, 2022) ("Applying the traditional tools of construction, the Court concludes that 'loss' in § 2B1.1 is not genuinely ambiguous."). The Court should follow *Banks* and make the same finding regarding this lack of ambiguity. If it does, the *Kisor* limitation on *Auer* deference precludes resort to Application Note 3(B).[4]

Even if the Court declines to follow *Banks*'s reasoning regarding the unambiguous nature of the term "loss" in Guideline 2B1.1(b)(1), *see Williams*, 2023 WL 2613503, at *6–9 (applying the *Kisor* framework, but disagreeing with *Banks* and finding that "loss" is ambiguous with respect to whether it includes actual loss and intended loss); *Taboada v. United States*, 2023 WL 2466595, at *3 (S.D.N.Y. Feb. 13, 2023) (finding "loss" ambiguous in Guideline 2B1.1 but noting that "[u]nlike other provisions of the Guidelines, Section 2B1.1 does not use the language of . . . benefit to the defendant"), resort to Application Note 3(B) still would be inappropriate.

The word "gain" does not appear in Guideline 2B1.1(b)(1). Regardless of whether "loss" could reasonably be construed to encompass both actual and intended loss, interpreting the word "loss" to mean "gain" in situations where the loss "reasonably cannot be determined" is clearly unreasonable. In fact, *Webster's* online thesaurus lists "gain" as an antonym or near antonym of "loss."[5] *Loss*, Merriam-

---

[4] The Government's reliance on *United States v. Zafar* (*see* ECF No. 922 at 8), is misplaced because that case predates *Kisor* by more than a decade and cites Guidelines commentary with no analysis of ambiguity or reasonableness. *See Zafar*, 291 F. App'x 425, 429 (2d Cir. 2008).

[5] The two words' respective dictionary definitions confirm that they are opposites. *Compare, e.g.*, *Loss*, *Black's Law Dictionary* (11th ed. 2019) (defining "loss" as "the disappearance or diminution of value"),

4

Webster Thesaurus, https://www.merriam-webster.com/thesaurus/loss (last visited April 8, 2023). As such, "gain" does not "fall 'within the bounds of reasonable interpretation'" of "loss," and therefore Application Note 3(B) merits no consideration under *Kisor*.[6] *Kisor*, 139 S. Ct. at 2416 (quoting *Arlington v. FCC*, 569 U.S. 290, 296 (2013)); *see also id.* ("And let there be no mistake: [a reasonable reading] is a requirement an agency can fail."); *Nasir*, 17 F.4th at 472 (Bibas, J., concurring) ("The judge's lodestar must remain the law's text, not what the Commission says about that text."); *cf. United States v. Zangari*, 677 F.3d 86, 91, 92–93 (2d Cir. 2012) (finding that the word "loss" in the Mandatory Victims Restitution Act, 18 U.S.C. § 3664, means the victim's "actual, provable loss" and that "gain" may not be substituted for the victim's loss).

Because Application Note 3(B) is inapplicable to support an increased offense level pursuant to Guideline 2B1.1(b)(1), the Government must demonstrate quantifiable "loss." But here, the Government has not even attempted to quantify "loss." Instead, it has side-stepped the issue by complaining that calculating loss would be too complicated. (*See* ECF No. 922 at 8 (noting that "loss . . . is difficult-to-impossible to quantify, because it requires consideration of a hypothetical alternative scenario" and that the "various factors that contributed to Black Elk's bankruptcy, including the fraudulent scheme, are impossible to detangle from one another").) As the other defendants have demonstrated, the Government is incorrect—the loss is calculable, that calculation results in a finding that there is no loss, and, as such, it is inappropriate even to consider gain. (*See e.g.*, ECF No. 994 at 4–11.) But, as discussed herein, the Government seeks to lead this Court into error by failing to account for the fact that Application Note 3(B) and its use of "gain" cannot be properly applied to this case under any circumstances. Therefore, the Court should find that any "gain" is immaterial to the calculation and further find that there was no "loss" for purposes of Guideline 2B1.1(b)(1).

---

*and Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited April 8, 2023) (defining "loss" as a "decrease in amount, magnitude, value, or degree"), *with Gain*, *Black's Law Dictionary* (11th ed. 2019) (defining "gain" as "[a]n increase in . . . value"), *and Gain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/gain (last visited April 8, 2023) (defining "gain" as "an increase in amount, magnitude, or degree").

[6] Should the Government attempt to resist this conclusion by relying on a district court decision from the Northern District of California, *United States v. Abouammo*, 2022 WL 17734424 (N.D. Cal. Dec. 16, 2022), that reliance would be misplaced. First, in *Abouammo*, the court's discussion of ambiguity was dicta because, as the court noted, under current Ninth Circuit law, *Kisor* does not apply to the Guidelines and therefore "whether the term 'loss' is unambiguous is immaterial." *Id.* at *2 (quoting *United States v. Suris*, 2022 WL 17580678, at *3 (C.D. Cal. Sept. 6, 2022)). Moreover, the *Abouammo* court engaged in no meaningful textual analysis of the term "loss," and its conclusion is based on the faulty premise that the term "loss" is rendered ambiguous generally because the loss in that specific case was incalculable. *See id.* Not so. The definition of "loss" is plain and unambiguous, regardless of whether it is easy or difficult to calculate in a particular case. But even if the term "loss" somehow were ambiguous, the *Abouammo* court offered no basis for concluding that it would be reasonable under *Kisor* to resolve that ambiguity by importing into the definition of "loss" its very opposite—"gain." Accordingly, the Court should reject *Abouammo*'s reasoning.

We thank the Court for its consideration.

                                              Respectfully submitted,

                                              */s/ Seth L. Levine*
                                              Seth L. Levine
                                              Paul A. Murphy
                                              Alison M. Bonelli

cc: All Counsel of Record (via ECF)